**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN N. FLIGGE,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-01561** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**April 27, 2007**

### I.     Introduction.

Karen Fligge brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application pursuant to the Social Security Act ("Act") for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Consistent with the customary practice in the Western District of Pennsylvania, both parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the memoranda of the parties, and the entire record, the Court finds the ALJ's decision that Plaintiff was not under a disability is not supported by substantial evidence. The Court therefore will grant Plaintiff's motion for summary judgment, deny the Commissioner's motion for summary judgment, and enter judgment in favor of the Plaintiff.

**II.      Procedural History.**

Plaintiff, born on May 18, 1955,  filed her application for SSI and DIB on December 31, 2004, alleging disability from work as of September 24, 2003.  R. 14.  Following administrative denial of benefits, Plaintiff appealed and a hearing was conducted before ALJ Douglas W. Abruzzo on January 13, 2005, at which plaintiff, represented by counsel, testified, as did a vocational expert ("VE").  R. 14-21.  On June 28, 2006, the ALJ denied the Plaintiff's claim, finding that Ms. Fligge was not disabled for the purposes of her alleged period of disability, nor could she recover disability insurance benefits for any time since her alleged onset date of disability.  R. 14.  Underlying this decision was the ALJ's finding that Plaintiff retained the residual functional capacity ("RFC") to perform a wide range of heavy work, for which there existed a significant number of jobs in the national economy.  R. 16, 19.  The VE testified that there were approximately 2,200 acceptable jobs in the local economy, and that a much greater number existed in the state and national economies.  R. 20.

On September 28, 2006, the Appeals Council affirmed the ALJ's decision, which thus became the final decision of the Commissioner.  Plaintiff then filed her complaint herein seeking judicial review of the Commissioner's final decision.

**III.      Statement of the Case.**

Over the past few years, Ms. Fligge has suffered from a number of physical and mental impairments.  She has been diagnosed and treated for Type 1 diabetes mellitus, heart and artery disease, insulin dependancy, chronic back pain, ulcers, bilateral carpal tunnel syndrome, a gall

bladder disorder, cataracts, and an affective disorder characterized by depression.  R. 15, 183.  As

a result of these ailments, Plaintiff has undergone a number of surgical procedures.  R. 140, 172,

335, 347.  Throughout her period of alleged disability, her Type 1 diabetes mellitus has been

diagnosed as "poorly controlled," her heart troubles have persisted, and she has been diagnosed

with obesity, hypertension and bilateral cataracts.  R. 256-57, 279.  Plaintiff mainly complains of

depression, carpal tunnel syndrome symptoms, numbness and tingling in her extremities,

shortness of breath, continual fatigue, chest pain, and gallstones.  355-57, 386-91, 405.  Plaintiff

claims that these ailments have rendered her disabled since September 24, 2003.  R. 14.

Ms. Fligge has a long work history, and has earned wages every year from 1972 through

2001.  R. 77.  For the last twenty years of her work history (1981-2001), she worked as a

Licensed Practical Nurse - quitting only upon being diagnosed with heart disease.  R. 347.  Ms.

Fligge lives at home with her husband and 15-year old daughter, where she cooks and performs

light house work.  R. 349.  Her husband and daughter perform the more difficult tasks, and

almost all outside work.  R. 349.

The ALJ made the following specific findings:

1.      The claimant met the disability insured status requirements of the
        Social Security Act as of September 24, 2003, the alleged onset
        date of disability, and continues to meet those requirements through
        2008.

2.      The claimant has not been engaged in substantial gainful work activity
        at any time since the alleged onset date of disability.

3.      The medical evidence of record establishes that the claimant has
        several impairments which, considered collectively, are severe.

4.      The claimant does not have an impairment, or combination of
        impairments, severe enough to meet or equal the requirements of any

of the listed impairments set forth in Appendix 1, Subpart P, Social Security Administration Regulations No. 4.

5.      The claimant has the residual functional capacity to perform a wide range of heavy work.

6.      The claimant does not have the residual functional capacity to perform any past relevant work.

7.      There are jobs that exist in significant numbers in the national economy, which the claimant can perform, which are consistent with all medically determinable impairments, functional limitations, age, education, and work history.

8.      The claimant is a 48 year old younger individual as of the alleged onset date of disability who has a 12th grade education whose past relevant work does not provide the claimant with skills transferable to the claimant's functional capacity.

9.      The claimant has not been under a "disability," as defined in the Social Security Act, at any time since the alleged onset date of disability of September 24, 2003.

R. 15-20.

In her appeal from these findings and determinations, Plaintiff argues that the ALJ did not adequately consider her Type 1 diabetes mellitus when determining her residual functional capacity ("RFC") and subsequent work capability.

## IV.   Standards of Review.

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are

pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v.*

*Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.*

*Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing*

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such

_____

> of the United States for the judicial district in which the plaintiff resides, or has
> his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a
> hearing under paragraph (1) shall be subject to judicial review as provided in
> section 405(g) of this title to the same extent as the Commissioner's final
> determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the

6

ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful

work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461

(*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff

must first demonstrate the existence of a medically determinable disability that precludes him or

her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*,

823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous

employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's

mental or physical limitations, age, education and work experience, he or she is able to perform

substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461;

*Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823

F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material

_____

[3] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits."

11

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).  He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence.  *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834

F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could

reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the

15

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002)

16

(consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002)

(distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they always must be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

---

[4] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527

---

[5] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

(d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V. Discussion.**

As both parties point out, the ALJ evaluated Plaintiff's impairments under Listings 1.00 (Musculoskeletal System, 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00 (2005)), 2.00 (Special Senses and Speech, 20 C.F.R. pt. 404, subpt. P, app. 1, 2.00 (2005)), 4.00 (Cardiovascular System, 20 C.F.R. pt. 404, subpt. P, app. 1, 4.00 (2005)), 5.00 (Digestive System, 20 C.F.R. pt. 404, subpt. P, app. 1, 5.00 (2005)), 11.00 (Neurological, 20 C.F.R. pt. 404, subpt. P, app. 1, 11.00 (2005)), and 12.00 (Mental Disorders, 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00 (2005).  Plaintiff's Brief in Support of Summary Judgment at 10; Defendant's Brief in Support of Summary Judgment at 10 (citing R. 16).   However, the ALJ failed to address Plaintiff's Type 1 diabetes mellitus under the specific parameters of Listing 9.08 (Diabetes Mellitus, 20 C.F.R. pt. 404, subpt. P, app. 1, 11.00 (2005)) .

The United States Court of Appeals for the Third Circuit has stated that, at step three of a disability evaluation, the ALJ must analyze all significant medical evidence in sufficient detail as to ensure meaningful appellate review.  *See Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000).  Here, the ALJ's failure to address the medical evidence offered by Plaintiff in support of her disability claim under Listing 9.08 makes meaningful review of her disability claim difficult, if not impossible.

Listing 9.08 is satisfied when a claimant has diabetes mellitus with: (A) Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (*see* 11.00(C); or (B) Acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests (pH or $pCO_2$ or bicarbonate levels); or (C)

Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.  20 C.F.R.  pt. 404, subpt. P, app. 1, 9.08 (2005).  Plaintiff offered evidence that supports a potential finding in favor of this listing being satisfied.

She was first diagnosed with diabetes in 1964, and, during her period of alleged disability, was again diagnosed with diabetes in September and December of 2003 (R. 200-01, 220, 264), and August of 2005 (R. 292).  In September of 2003, Dr. Juan Chahin, a cardiologist, acknowledged her long history of Type 1 diabetes mellitus, and opined that her diabetes was poorly controlled.  R. 279.  In December of 2003, Dr. Mani Bashyam, an endocrinologist, diagnosed Plaintiff with Type 1 diabetes with poor glycemic control, hypoglycemia, proliferative retinopathy, mild peripheral neuropathy, and hyperlipidemia.  R. 264-65.  Then in August of 2005, Dr. Bashyam again diagnosed Plaintiff with Type 1 diabetes with very poor glycemic control, hypertension, hyperlipidemia, hyperglycemia, obesity, peripheral mild neuropathy, proliferative diabetic retinopathy, and early cataracts.  R. 292.  Also noteworthy is the fact that in April of 2004, Plaintiff was diagnosed by Dr. Thierry Verstraeten, an ophthalmologist, with a right eye cataract and regressed proliferative diabetic retinopathy.  R. 210.

Where a claimant has multiple impairments which, by themselves, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment.  *Burnett v. Commissioner*, 220 F.3d 112, 122 (3d Cir. 2000). Because the ALJ did not address or even seem to consider the medical evidence of Plaintiff's diabetic condition, the opinion below failed to meet this standard by failing to explain

why he found such evidence unconvincing.  Because the medical evidence arguably supports a Listed Impairment under Listing 9.08, this evidence must be evaluated upon remand.

Moreover, only when a hypothetical question to the VE *accurately sets forth all of a claimant's significant impairments and restrictions in activities*, physical and mental, as found by the ALJ or as uncontradicted on the medical record, may the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing be considered substantial evidence in support of the ALJ's findings on claimant's RFC.  *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Podedworny v. Harris*, 745 F.2d 210 218 (3d Cir. 1984)).  As a result of the ALJ's failure to evaluate Plaintiff's diabetic condition under Listing 9.08, the hypothetical posed to the VE was inadequate, as it did not accurately set forth all of Ms. Fligge's significant impairments.

Lastly, the ALJ improperly discounted Plaintiff's subjective complaints about the disabling effects of her conditions.  An ALJ must give serious consideration to all of the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence, *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993), but here, there was ample medical evidence supporting her subjective account of her condition and impairments.  Furthermore, testimony regarding pain from a claimant with a long work record substantiates a claimant's credibility and is entitled to great weight.  *See Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981), quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979).  As previously noted, Plaintiff worked for nearly twenty years as a nurse, and thirty years earning wages overall. With her extensive work history in mind, the ALJ appears to have given short shrift to Plaintiff's subjective complaints when evaluating her impairments and RFC.

**VI.  Conclusion.**

Because the ALJ failed to address Plaintiff's long-standing diabetic condition and discuss the medical evidence about her diabetes and its debilitating effects, the Court finds that the ALJ's decision is not supported by substantial evidence, and will vacate the decision and remand for further proceedings consistent with this opinion.

An appropriate order will follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:  All ECF registered counsel

23